Filed 9/30/13  P. v. Campos CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LUIS ROBERTO CAMPOS,<br><br>        Defendant and Appellant. | A133830<br><br>(Contra Costa County<br>Super. Ct. No. 05-110765-5) |

In this appeal, we are asked to review convictions involving sexual assaults on two separate victims.  Jane Doe I (Doe I) was 13 years old at the time of the offenses against her.  Jane Doe II (Doe II) was 25 years old.  Several errors are presented by defendant which he believes supports reversing the convictions on appeal.  We have reviewed the arguments and find them without merit.

## FACTS

This prosecution concerns sexual assaults on two females, Doe I and Doe II. Doe I was 13 when she was victimized.  Doe II was 25.  Defendant was a relative of each victim.  Defendant was convicted of four counts of lewd acts with a child (Pen. Code,[1] § 288, subd. (a); counts 1, 7, 8, & 9), four counts of forcible lewd act on a child (§ 288, subd. (b)(1); counts 2, 3, 4, & 5); two counts of forcible false imprisonment (§ 236/237, subd. (a); counts 6 & 11) and assault with intent to commit rape (§ 220, subd. (a); count 10).  Regarding counts 2 through 5, the information alleged under section 667.61,

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

subdivision (d)(2) that forcible lewd acts were done by kidnapping, which increased the risk of harm to the victim.

The jury found defendant guilty of all counts. The jury found the forcible lewd acts were accomplished by kidnapping under section 667.61, subdivision (e)(1) but not that the kidnapping substantially increased the risk of harm within the meaning of section 667.61, subdivision (d)(2). On November 4, 2011, defendant was sentenced to prison for 38 years to life.

Doe I is defendant's niece. When she turned 13 in early 2007, she moved from El Salvador to Portland, Oregon, to live with her father, H.C. Near the end of July 2007, Doe I traveled to the Bay Area to visit her uncle, Oscar C. and defendant, and her grandmother, who lived with defendant.

Defendant was the coowner of Casa Chicas, a business that distributed chips and salsa. Oscar C. worked for him. Doe I had known her Uncle Oscar for a long time and considered him like a father.

During the visit to the Bay Area which lasted two weeks, Doe I took a trip to Disneyland and Las Vegas with defendant, his wife Cristina, and their two-year-old son. Since Cristina drove most of the trip, defendant sat in the backseat of the truck with Doe I. On the trip, he touched Doe I's breasts. In Las Vegas, defendant tried to molest Doe I in their hotel room, but he stopped when Doe I protested. He told Doe I not to tell anyone because her grandmother was very sick and disclosure would make her worse.

When the family returned to the Bay Area, Doe I went to sleep in her room. Defendant came into the room and fondled her breasts and crotch. Doe I struggled and defendant stopped when his wife knocked on the door.

Days later, defendant asked Doe I to take a trip to his warehouse. On the way, he took her to a motel. He took off her clothes in the room and kissed her breasts, engaged in oral copulation in Doe I's mouth, and penetrated her anus and vagina. Defendant warned Doe I not to tell anyone because it would make her grandmother ill. He also indicated he would fire her Uncle Oscar if she reported the conduct. Defendant told her he had lots of money and power and that he was immune from prosecution.

2

Another time, defendant, Cristina and Doe I were in the bedroom. Doe I was told by either defendant or Cristina that he enjoyed seeing women kiss one another. Defendant told Doe I to kiss Cristina. As directed by defendant, Cristina fondled the breasts of Doe I while he watched and fondled his crotch.

There was another molestation when defendant and Doe I were parked near a movie theatre. Cristina was in the front seat of the truck and defendant with Doe I were in the rear. He touched Doe I's crotch over her clothes.

The final act of molestation happened when defendant took Doe I to the airport for her flight home. On the way, defendant stopped in a park and had sex with her before going to the airport.

As a witness during the trial, Doe I denied any and all acts of molestation by defendant. She did confirm that when she returned to Portland, she told her father that defendant had molested her. Her father contacted the Portland Police Department and Officer Charles Dune came to the house and interviewed her. She also told in a detailed interview with CARES Northwest (CARES), a county facility handling children who were sexually molested, about the various incidents with defendant. However, Doe I did get emails from Uncle Oscar and Doe I's sister that defendant financially supported the family and that the grandmother was not doing well because of the charges against him. They advised she should stop the criminal investigation. Doe I denied being influenced by the emails.

In November 2010, Doe I met the defense investigator. She confirmed defendant had sex with her. She asked about dropping the charges because she "didn't think [the charges] would destroy my family."

During the trial, Doe I said she made the allegations because she was mad at defendant. She wanted to live with Uncle Oscar and not her father. When defendant sided with her father on the issue, Doe I became mad at defendant and sought revenge.

Doe I's father and Portland Police Officer Charles Dune testified regarding her statements on the molestations by defendant; the CARES Northwest interview was played for the jury at trial.

3

Defendant's wife, Cristina, testified confirming the allegations of Doe I. She affirmed the incident when defendant watched the two females engage in sexual conduct at the home. She also confirmed being in the truck while parked at the movie theatre. Cristina also remembered the time when defendant told her he was taking Doe I for a short trip to the warehouse, but did not return home until two or three hours later. She further recalled their return from Disneyland. She and defendant got into an argument and he then went into Doe I's room and locked the door.

When Doe I returned to Portland after the Disneyland-Las Vegas trip, her father, H.C., noticed she was very upset. Doe I related to her father what had happened with defendant. She told him defendant had taken her to a hotel to have sex and that his wife had touched her inappropriately. She also told him about having sex on the way to the airport.

Also, H.C. had received at least two anonymous phone calls asking him if he was aware of any incidents between his daughter and defendant. H.C. also noticed that defendant called the home when H.C. was at work. When the anonymous caller reached H.C. a second time about conduct between Doe I and defendant, Doe I's father confronted her and she related having sex with defendant. H.C. recalled the specifics of what she told him.

After H.C. called Portland police, Charles Duane responded to take the information. To Duane, Doe I related the incident in the bedroom and the assault in the hotel when the two were supposed to have gone to the warehouse. Doe I did not tell Duane about the sexual improprieties on the Disneyland-Las Vegas trip. She also discussed the incident with Cristina while defendant watched.

Doe I also spoke with the CARES interviewer in Portland. This conversation was videotaped and presented during the trial. During the interview, Doe I discussed both the incident in Las Vegas with defendant and the time when he came into her bedroom and struggled with her, until interrupted by Cristina's knocking on the door. She also talked about the time defendant took her to a hotel, opening the door with an electronic key he

4

already had and having oral, vaginal, and anal sex with Doe I against her will. Doe I also related the assault on the way to the airport for her return home.

After defendant was arrested, Doe I received emails and calls from family members, urging her to drop the case. Doe I was told to forgive him and to abandon the "craziness." All the emails were turned over to her father, H.C., who gave them to the police. While defendant's counsel objected to the emails in a motion in limine, the court believed they were admissible because they showed the effect on Doe I and her willingness to go forward as a witness.

The second victim, Doe II, was defendant's cousin. In September 2007, she was 25 years old and had recently moved to California from Nicaragua. Originally, she lived at the home of Reynaldo C., defendant's brother in California, and then with Oscar C. Oscar offered to help her obtain work at defendant's company, Casa Chicas. Doe II was hired at the company and also worked as a babysitter for defendant's young son.

On Doe II's first day of babysitting at defendant's home, she worked during the day and into the evening. Defendant came home and eventually called Doe II into the bathroom of the home. He asked her if she wanted to join him in the Jacuzzi tub. She refused. Defendant then told her he was going to sleep in his son's room that night and Doe II could use the master bedroom. She accepted the offer.

During the night, Doe II was awakened by defendant climbing on top of her. He held her arms above her head and began forcibly kissing her, and fondling her breasts and vagina. He started rubbing his penis against her vaginal area. Doe II asked him to let her go but defendant ignored her pleas. Finally, she was able to escape from the room and ran downstairs to the laundry room locking the door. He pursued her claiming nothing had happened and asking her forgiveness.

Doe II called Oscar and Amber, his wife, for help. When Oscar told her he could not pick her up, Doe II left the home of defendant and began walking to Oscar's residence, a few miles away. Along the way, Amber came upon Doe II and took her home the rest of the distance. Once home, Doe II told Amber about what defendant had done.

In the latter part of 2010, Doe II received a call from her mother in Nicaragua asking if Doe II had sent money home. Her mother forwarded to Doe II several receipts indicating payments of $90 each. Most were in Doe II's name but some were in the name of Alex C., another brother of defendant. Alex told Doe II the payments were designed to have Doe II cooperate with defendant's investigator.

The prosecution presented additional evidence concerning an uncharged rape of a victim named Carmen S. Carmen began working for defendant at Casa Chicas in 2003. In November 2003, he saw Carmen at the warehouse and offered her a ride home. While driving, defendant offered Carmen a can of soda to drink. He was drinking a similar beverage. She accepted the soda and drank it while defendant drove. As they neared her home, she blacked out. When she woke up, she was naked in a hotel room, with defendant lying next to her. Her breasts, vagina and anus were sore, and she was bleeding from her anus. Carmen got dressed and asked defendant to drive her home. As they returned to her house, defendant advised her not to discuss the events with anyone else. He told her he knew police and she could get deported. Because of the threats, she was afraid to say anything. The next day, he told her she could lose her job if she told anyone. After this incident, at various times, defendant would grope Carmen at work and make inappropriate comments about her.

Days after the incident at the hotel, defendant asked Carmen to get in his car because he needed to speak with her. He took her to the hotel and demanded sex from her. If she complied, defendant said he would bring her daughter to California from Peru.

Eventually, in December 2003, Carmen reported the events to the police. Apparently, defendant learned of her report because he came to her apartment and threatened that things would get worse if she pressed these allegations. Due to this pressure, Carmen dropped her complaint. Based on his "success" intimidating Carmen, defendant demanded and obtained sexual favors from her on subsequent occasions. She was afraid of being deported.

While San Pablo Police Officer Scott Cook was investigating the allegations of Doe I, he called Doe I's father, H.C., on October 23, 2007, and learned about the second

6

victim, Doe II.  Based on this information, Cook called Doe II, who had already heard about the crimes involving Doe I.

## ARGUMENT

**I.  *The Trial Court Properly Denied Defendant's Severance Motion***

Defendant argues the trial court abused its discretion in denying his motion to sever the counts involving Doe I from those relating to Doe II.  We disagree.

**A.  *Standard of Review***

Section 954 provides that "[a]n accusatory pleading may charge two or more different offenses of the same class of crimes or offenses, under separate counts . . . . provided, that the court in which a case is triable, in the interests on justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately." (See *People v. Bradford* (1997) 15 Cal.4th 1229, 1314–1315.)  In this prosecution, the alleged crimes involving the two victims concerned the same class of felonies, false imprisonment and sex offenses, satisfying the statutory requirements for joinder.  (*People v. Maury* (2003) 30 Cal.4th 342, 395.)  Error will be found only if defendant establishes clearly an abuse of discretion and prejudice by the trial court's determination to join the cases.  (*Ibid.; People v. Osband* (1996) 13 Cal.4th 622, 666.)  "The law favors the joinder of counts because such a course of action promotes efficiency."  (*People v. Myles* (2012) 53 Cal.4th 1181, 1200.)

The burden is clearly on defendant to establish on appeal there is substantial danger of prejudice requiring the charges be separately tried.  This determination of prejudice is dependent on the particular circumstances present in the individual case.  However, particular criteria have developed over time to provide guidelines in reviewing a motion to sever.  " ' " 'Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might

7

well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case.' " ' " (*People v. Vines* (2011) 51 Cal.4th 830, 855.)

Over time, the Supreme Court has made it clear that where there is a finding the joined offenses are instances of cross-admissibility, the likelihood of prejudice is remote and the denial of a severance motion is not an abuse of discretion. (*People v. Maury, supra,* 30 Cal.4th at p. 393 ["Because evidence of the murders was cross-admissible, any likelihood of prejudice was dispelled. [Citation.] For that reason alone, no abuse of discretion would have occurred in denying severance."]; *People v. Mayfield* (1997) 14 Cal.4th 668, 721 ["To determine whether joinder posed a substantial risk of prejudice, we inquire first whether evidence of the charged offenses would have been cross-admissible in separate trials. If so, then 'any inference of prejudice is dispelled.' "]; see also *Frank v. Superior Court* (1989) 48 Cal.3d 632, 639.)

**B.** *No Abuse of Discretion*

In this matter, defendant contends prejudice is presented because joinder here involved consolidating a weak case (Doe I) with a strong case (Doe II).

When the trial court denied the severance motion, she noted the offenses would be cross-admissible if the cases were tried separately under Evidence Code section 1108. Also, the offenses would not be excluded under Evidence Code section 352. When she denied the motion for new trial on the grounds of joinder and had the advantage of the full presentation of the evidence in both instances, the court noted "[t]here's no way that this evidence would not have been cross-admissible [under section 1108] if we had severed. So there's no harm in trying them together. And the efficiency of trying them together is something to consider."

In his opening brief, defendant labels the finding of cross-admissibility as "simply the first step in determining" severance. Such labeling is incorrect. Clearly a finding that there is no cross-admissibility is the first step in a prejudice analysis, but the cases indicate the finding of cross-admissibility is conclusive in establishing the absence of prejudice. " ' "While we have held that cross-admissibility ordinarily dispels any

8

inference of prejudice, we have never held that the absence of cross-admissibility, by itself, sufficed to demonstrate prejudice." ' " (*People v. McKinnon* (2011) 52 Cal.4th 610, 630; see also *People v. Maury, supra,* 30 Cal.4th at p. 393; *Frank v. Superior Court, supra,* 48 Cal.3d at p. 639.)

Reflecting on the trial court's comments referenced above in denying the severance motion, defendant does not contend the offenses are inadmissible under Evidence Code section 1108. Instead, he argues that the offenses are excluded under section 352 of the Evidence Code.

Our assessment of this argument begins with reference to *People v. Falsetta* (1999) 21 Cal.4th 903, where the court addressed the relationship between the two evidence statutes. "By reason of [Evidence Code] section 1108, trial courts may no longer deem 'propensity' evidence unduly prejudicial per se, but must engage in a careful weighing process under [Evidence Code] section 352. Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Id.* at pp. 916–917.)

When we apply this directive to the trial court's process in this case, we conclude as did the trial court the assault on Doe II was admissible in the Doe I trial, regardless of the severance.

We begin with the observation that defendant agrees the evidence regarding the assault on Doe II was strong and not remote. We also observe the assaults against each victim were similar. Each victim was a relative of defendant. Each was staying as a guest in his house. Each had recently arrived in this country from Central America. Each

9

was attacked without consent in at least one instance while she slept in a bed provided by defendant.

It is also true the two victims were attacked by defendant at different times. The two victims did not know of each other's victimization at the time they related the criminal conduct of defendant to law enforcement officials. The independent and isolated narrative of each victim is the focus here and not the fact the police learned of Doe II's attack after learning of the assault on Doe I. (Cf. *People v. Ewoldt* (1994) 7 Cal.4th 380, 404–405.) Indeed, defendant errs in relying on *Ewoldt* in this analysis. *Ewoldt* is a decision involving the analysis of Evidence Code section 1101, subdivision (b), and the use of similar conduct to establish a common scheme and design. The case has no application to section 1108 and propensity evidence in sex crime prosecutions. In our case, the separate charges are admissible as propensity evidence to commit sex crimes. We are not assessing a common plan of conduct.[2]

Other arguments raised by defendant are not persuasive. He maintains joinder created adverse consequences for him because it resulted in the presentation of a highly prejudicial scenario of a child being assaulted by an adult. Because of Doe I's age, the crimes did have serious consequences if convicted. However, the claim shifts focus away from his original argument that the stronger Doe II case impacted on the Doe I review. The Doe II charges involving assault as opposed to completed rape on Doe I were not as inflammatory. There is no improper prejudice in the Doe I charges.

Another prong of defendant's claim regarding the weak Doe I case is Doe I's trial court recantation of the offenses against her. He asserts the recanting made the case weak.

In this case, the jury had the opportunity to assess Doe I as she testified. They heard her recantation and noted her questioning by the prosecution and defendant's

_____

[2] On this point, one could argue common features are present. Defendant attacked vulnerable females from Central America who were guests in his home, related by blood, and threatened with consequences to other family members if they reported his conduct to the police.

10

counsel.  They also were given considerable background regarding what Doe I told authorities in Portland, her father and the CARES interviewer.  Evidence was presented that between the time of these interviews and statements, and the trial of the case, Doe I was pressured by several family members to abandon her complaint.  Importantly, after this pressure was placed on her, Doe I met with a defense investigator in November 2010.  When she met the investigator, she stated that as a 13-year-old child, she had sex with defendant in a hotel room in Las Vegas and in a park on the way to the airport returning home—but that she consented to each of them.  The jury may have concluded the recantation scenario at trial that nothing took place was unbelievable.

Adding to the lack of credence to recantation is the corroboration of Doe I's statements to her father and various police persons.  Cristina H., the wife of defendant at the time of the assault, acknowledged Doe I was with defendant in a locked bedroom the day they all returned from Las Vegas.  She also recalled the time defendant took Doe I ostensibly to the warehouse for 20 minutes but did not return for two to three hours.  And she related how the trio parked at the movie theatre lot, while she sat in the front seat and Doe I and defendant remained in the backseat.  Finally, she testified that defendant forced her to fondle Doe I's breast and told them to kiss while defendant watched.

We conclude any feature of recanting by Doe I during the trial did not make the portion of the case involving the offenses against her weak under a joinder analysis.

## II. *The Trial Court Did Not Abuse Its Discretion Admitting Evidence of the Prior Rape of Carmen S.*

Defendant argues the trial court abused its discretion allowing the prosecution to introduce evidence of the 2003 rape of Carmen S.  He maintains he did not receive sufficient notice of the incident as required by Evidence Code 1108.  Additionally, defendant contends the evidence was not admissible under Evidence Code section 352.  Neither argument has merit.

### A. *Factual Background*

The district attorney filed a motion to introduce the Carmen S. incident pursuant to Evidence Code section 1108 on August 18, 2011.  The defense filed their opposition also.

11

The trial court held a hearing on that same day. At the completion of the proceeding, the court determined the evidence was admissible under section 1108 and the evidence was not excludable under section 352's balancing test. The district attorney acknowledged he was not currently in contact with Carmen but was attempting to reach her through her sister.

On September 7, 2011, the defense renewed its opposition to the Carmen S. evidence. Trial counsel acknowledged she had had possession of the police reports dealing with the 2003 incident "for some time," but advised the court the prosecutor had not given her contact information for Carmen 30 days before the trial. In fact, the record reflects the district attorney had referenced the 2003 rape incident at the preliminary hearing in May 2011. In response to the lack of contact, the district attorney told the court he only recently learned Carmen was residing in New York and made an initial contact with her the past week. The district attorney's office had had no substantive discussions with her regarding the 2003 rape. Based on this information, the court told the district attorney to make Carmen available to the defense before she testified in the trial. Carmen, however, refused to speak with the defense.

### B. *No Abuse of Discretion*

The trial court did not abuse its discretion in receiving evidence at trial on the 2003 Carmen S. rape.

The defendant received proper notice under Evidence Code section 1108. Under Evidence Code section 1108, subdivision (b), "In an action in which evidence is to be offered under this section [1108], the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered in compliance with the provisions of Section 1054.7 of the Penal Code."[3] Section 1108 does not indicate the prosecution is obligated to provide contact

---

[3] Section 1054.7 provides: "The disclosures required under this chapter shall be made at least 30 days prior to the trial, *unless good cause is shown why a disclosure should be denied, restricted, or deferred. If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be*

12

information on a witness testifying under this section. It mandates the content of the proposed evidence regarding the incident be provided 30 days before the trial. The defense already had the police reports in timely fashion and was aware of the proposed testimony from the witness. The reports were referenced at the preliminary hearing more than one year before the trial. The defense indicated she had the documents "some time" before the trial.

The preliminary hearing transcripts indicate the district attorney provided proper notice to the defense of its intent to use the 2003 incident as propensity evidence under Evidence Code section 1108. The prosecutor questioned the investigating officer concerning whether he had reviewed prior incidents involving sexual misconduct by defendant. The questioning elicited that Carmen S. had first reported her rape in 2003, which triggered no objection by defense counsel. Then the prosecutor asked the investigator about a sexual abuse report involving Cristina H. The defense objected to this inquiry, but the district attorney replied it was being presented pursuant to section 1108. While the response citing section 1108 went to the abuse involving Cristina H., the references to the two potential victims followed each other in the discussion of section 1108—propensity evidence involving defendant. This provided defendant with early notice of the use of the Carmen S. rape under section 1108. (*People v. Soto* (1998) 64 Cal.App.4th 966, 976–982 [references at the preliminary hearing were sufficient to put the accused on notice of evidence under § 1108].)

In this record, defendant does not dispute the fact he had the police reports dealing with Carmen S's allegations well before the 30-day mandate of Penal Code section 1054.7. The core of his complaint is the lack of contact information regarding the witness. Yet, this is not a requirement for introducing sexual misconduct evidence under section 1108 of the Evidence Code. The district attorney appropriately satisfied its

*made immediately, unless good cause is shown why a disclosure should be denied, restricted, or deferred.*" (Italics added.)

13

discovery obligations here in a timely fashion. (*People v. Soto, supra,* 64 Cal.App.4th at pp. 981–982.)

Alternatively, section 1054.7 does allow excuse from compliance with the 30-day mandate if good cause is shown. We find the prosecutor had good cause. The district attorney did not discover the location of Carmen S. until a few days before the trial. They quickly advised the defense of this information. The trial court did not abuse its discretion in finding good cause for late disclosure. The court gave the defense an opportunity to interview the witness prior to her testimony at trial. She refused to speak with defense counsel. No prejudice is demonstrated on this record by the late disclosure. Indeed, Carmen S. refused to discuss her incident with defense counsel even when she met with counsel face-to-face.

## III. *Evidence Code Section 352*

Defendant also argues the trial court failed to exercise its discretion under Evidence Code section 352 to exclude the Carmen S. evidence. Section 352 allows the trial court authority to exercise its broad discretion in determining whether the probative value of certain evidence is outweighed by concerns of undue prejudice, confusion, or improper consumption of judicial time. On appeal, this court focuses on the issue whether the trial court's discretion must be disturbed. We do so only if the exercise of discretion was arbitrary, capricious, or patently absurd resulting in a miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124; *People v. Brown* (2000) 77 Cal.App.4th 1324, 1337.) "Evidence is substantially more prejudicial than probative [citation] if, broadly stated, it poses an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome.' " (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)

### A. *The Court Erred by Admitting Prior Crime Evidence*

The "prejudice" that concerns Evidence Code section 352 balancing is that evidence which " 'uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.' " (*People v. Karis* (1988) 46 Cal.3d 612, 638.) It does not broadly cover evidence that only "damages" the defense; a feature that should follow from relevant, highly probative evidence in a trial. (*Ibid.*)

14

We have previously referenced the factors discussed in *People v. Falsetta, supra,* 21 Cal.4th 903, 916–917, which discuss Evidence Code sections 352 and 1108. The Carmen S. evidence was relevant because it supported the credibility of the two Doe victims at trial, a central issue of the prosecution. (*Falsetta,* at p. 923.) The Carmen S. rape was not remote, happening just four years before the incidents at trial. The level of certainty in her testimony was obvious. There was slight chance of juror confusion because what happened to Carmen could be compartmentalized separately from the current matters at trial. The time for presentation was not substantial. We acknowledge the Carmen S. rape was not identical to the charged crimes—the 2003 occurrence involved drugging the victim—but defendant's pattern of threatening Carmen and asserting domination over her to compel further sexual acts were similar to the charged behavior involving Doe I. The incident was therefore quite probative in nature. (*People v. Soto, supra,* 64 Cal.App.4th at pp. 991–992.)

It is also worth noting the Carmen S. incident was presented in a straightforward manner, with the victim-witness providing the details of the incident. This evidence did not involve the more inflammatory disclosures related by Doe I, age 13 at the time of the assaults, also featuring the involvement of defendant's wife in sexual misconduct.

Defendant argues there were differences between the Carmen S. and Doe incidents. He is correct that there was no evidence Doe I ingested drugs or was unconscious as Carmen testified. Defendant also points out that Carmen was harassed at the workplace to perform sexual favors for him. The absence of evidence pertaining to drug use in the charged Doe I case does not preclude admission of the Carmen S. details under Evidence Code section 1108. In *People v. Loy* (2011) 52 Cal.4th 46, 63, the court noted the conclusion of the Legislature that the evidence of prior sexual misconduct introduced under 1108 is uniquely probative in sexual assault prosecutions and that it is presumed admissible without focusing on the details of similarities required by Evidence Code section 1101, subdivision (b). Also, though brief in time, the evidence involving sexual assault of Doe I was persistent and often during her stay at defendant's home. It

15

was marked by threatening statements and instances of male domination, similar to what Carmen S. experienced.

While it is true the 2003 Carmen S. rape did not result in a criminal prosecution, that fact does not preclude its admissibility, as defendant suggests. The evidence has relevance on propensity, information the Legislature has determined is highly relevant in sexual prosecutions. Additionally, the fact no prosecution took place in 2003 does not bar receipt of propensity evidence. (*People v. Soto, supra,* 64 Cal.App.4th at pp. 991–992; *People v. Callahan* (1999) 74 Cal.App.4th 356, 372.) The fact Carmen did not pursue criminal charges against defendant perhaps permitted the jury to critically assess the incident as evidence. After all, it had not been reviewed by any prior jury. Furthermore, the jury was told defendant was not currently charged with the Carmen S. incident and they could consider her allegations only as they reflect the charges on trial.

In summary, defendant has not demonstrated the trial court abused its discretion in admitting the 2003 Carmen S. incident. The court properly did what it had to do in assessing the evidence and balancing probative value against the prejudice. We find the trial court sufficiently stated its reasons for admitting the evidence under Evidence Code section 352. (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1315–1316.)

**B.** *No Prejudice*

Assuming there was error by the trial court in receiving this evidence, we find no reasonable likelihood defendant would have obtained a more favorable result had the Carmen S. incident been excluded. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Of course, defendant maintains this review of error must be from the perspective of *Chapman v. California* (1967) 386 U.S. 18, 24. However, it is clearly the law of this state that erroneous admission of prior crime evidence is reviewed for prejudice under *Watson.* (*People v. Anderson* (1987) 43 Cal.3d 1104, 1137.) This evidence does not implicate due process by any standard. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 921–922.) The testimony of what happened to Doe I was singularly compelling and corroborated by the testimony of Cristina, then the spouse of defendant. Doe II's narrative was persuasive and not rebutted. Again each was admissible if the matters were

16

tried separately. The addition of the 2003 incident did not alter the jury's review of this case. Finally, defendant fails to indicate specifically how he was prejudiced by the admission of the Carmen S. incident. He makes generalized comments yet fails to show how he would have had a more favorable result if the 2003 Carmen S. rape had been kept out.

**IV.** *Defendant's Claim of Prosecutorial Misconduct*

Defendant argues in his brief the prosecutor engaged in misconduct during his argument. Specifically, he asserts the district attorney argued that the emails sent to Doe I show his guilt, even though the emails were admitted for the limited purpose of showing their impact on Doe I. However, defendant forfeited this matter when his trial counsel did not object to the closing argument by the prosecutor on this point.

" 'A defendant who does not object and seek an admonition to disregard improper statements or argument by the prosecutor is deemed to have waived any error unless the harm caused could not have been corrected by appropriate instructions. [Citations.] Because we do not expect the trial court to recognize and correct all possible or arguable misconduct on its own motion [citations] defendant bears the responsibility to seek an admonition if he believes the prosecutor has overstepped the bounds of proper comment, argument, or inquiry.' " (*People v. Coddington* (2000) 23 Cal.4th 529, 595.) This procedure is necessary to ensure appellate review of purported misconduct by the prosecutor because the trial court needs to consider the objection and determine what remedy may be needed. (*People v. Noguera* (1992) 4 Cal.4th 599, 638.) Here we are asked to address *one* remark by the prosecutor near the beginning of his closing argument. Yet, trial counsel never objected to the remark. Forfeiture follows.

Because appellate counsel now maintains failure to object to this singular statement evidences ineffective counsel we must once again deal with this generic appellate suggestion.

The allegation of misconduct during final argument " 'focuses upon comments made by the prosecutor [and] the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable

17

fashion.' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 427.)  The alleged misconduct must be reviewed in context to determine its propriety and effect.  (*People v. Frye* (1998) 18 Cal.4th 894, 977.)  Also, the " 'prosecutor has a wide-ranging right to discuss the case in closing argument.  He has the right to fully state his views as to what the evidence shows and to urge whatever conclusion he deems proper.  Opposing counsel may not complain on appeal if the reasoning is faulty or the conclusions are illogical because those are matters for the jury to determine.' " (*People v. Thomas* (1992) 2 Cal.4th 489, 526.)

Of course, defendant had the constitutional right to competent and effective assistance of counsel at trial.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  Any allegation of ineffective assistance requires that two components be established in order for this court to reverse.  First, the defendant must show trial counsel's performance was deficient: his representation fell below the objective standard of reasonableness under prevailing professional standards.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688.)  It is hard for defendant to establish this degree objectively if the review of trial counsel's overall performance during the proceedings indicates active and capable advocacy.  (*Harrington v. Richter* (2011) 131 S.Ct. 770, 779.)

A second feature defendant must prove in this regard is he was prejudiced by his attorney's ineffectiveness.  (*People v. Ledesma, supra,* 43 Cal.3d at p. 217.)  " 'The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*Id.* at pp. 217–218, quoting *Strickland v. Washington, supra,* 466 U.S. at pp. 693–694.)  Furthermore, it is not our role to second-guess trial counsel or simply determine the matter could have been handled differently or more effectively.  " 'Rather, the defendant must show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics." (*People v. Lanphear* (1980) 26 Cal.3d 814, 828–829, judg. vacated and cause remanded (1980) 449 U.S. 810, opn. reiterated (1980) 28 Cal.3d 463.)

## V. *No Ineffective Assistance of Counsel*

Appellate counsel challenges the following comment by the prosecutor: "This is what the defendant does. This is his strategy. He finds people that are new in the country. People who don't necessarily speak English, so maybe they're particularly vulnerable. It's someone that he has some sort of authority over, whether that be through work or whether that be through some sort of elder status in the family, and then he sexually terrorizes them. And then after that, he uses his power and control to stop them from saying anything."

Defendant then argues that, by referencing "he uses his power and control to stop them from saying anything" the prosecutor was alluding to the emails sent to Doe I, which were admitted into evidence for a limited purpose. In fact, it seems the district attorney was referring to oral threats made by defendant to keep Doe I quiet after she was molested. Defendant told her if she disclosed what he had done, her grandmother would become sicker and her Uncle Oscar would lose his job at defendant's business. He also reminded her that no one would believe her because he had money and power. Carmen S. was also threatened in a similar way. With this record, the district attorney could point out the defendant used threats and assertions of power over these women to prevent "them from saying anything." This was his explicit claim later in the argument. A professional representing defendant could reasonably conclude this was the thrust of the evidence and the argument, precluding an objection at the time.

It also appears in this record the trial counsel decided to rebut instead of object, to the particular argument of the district attorney. Defense counsel's decision whether to object in argument to statements by the prosecutor are inherently tactical and "the failure to object will rarely establish ineffective assistance." (*People v. Maury* (2003) 30 Cal.4th 342, 419; *People v. Riel* (2000) 22 Cal.4th 1153, 1197.) As one court noted: "[M]any trial lawyers refrain from objecting during closing argument to all but the most egregious misstatements by opposing counsel on the theory that the jury may construe their objections to be a sign of desperation or hyper-technicality." (*United States v. Molina* (9th Cir. 1991) 934 F.2d 1440, 1448.)

19

Defendant cannot establish the reasonable probability he would have realized a more favorable outcome had his attorney objected to the reference in argument. (*Strickland v. Washington, supra,* 466 U.S. at pp. 693–694.) The trial court did provide a limiting instruction concerning statements of counsel. This minimized any prejudice. More importantly, the evidence of defendant's guilt was substantial. Defendant's brief falls considerably short of the proper mark to demonstrate prejudice and we reject it.

## VI. *Defendant's Contention the Trial Court Excluded Evidence Doe I was Allegedly Molested by Her Father is Unsupported by the Record*

Defendant argues the trial court excluded testimony by Doe I indicating she was molested by her father. The record does not support this claim. The judge expressly reserved a ruling on the motion for further consideration after Doe I's direct examination. Defendant's trial counsel declined to pursue the topic after Doe I testified. The record is clear the trial court did not exclude this evidence.

### A. *Factual Background*

Before the commencement of the trial, the district attorney filed an in limine motion to exclude evidence Doe I was molested by her father. In response, the defense represented the grandmother of Doe I advised them that after the child returned from visiting defendant's home in the Bay Area, Doe I called her grandmother and stated someone had entered her room and fondled her. The grandmother believed that since Doe I and her father were the only persons living at the house in Portland, the father had done the touching.

The trial court at first was reluctant to admit this evidence. The judge observed Doe I had never made such an allegation. However, the court declined to finally rule on the topic. It would defer its ruling until Doe I had testified. If the defense wanted to go into the subject on cross-examination, the court would take it up at that time. The trial judge did alert counsel to indicate out of the jury's presence this intention if needed.

During the new trial motion, the judge reminded the parties of its position in this regard. The court reviewed the transcripts and observed it was the defense burden to raise the issue at the indicated time. The bottom line is the defense did not raise the

subject when it could have and the court did not rule on the matter. The failure to renew a deferred motion on evidence or seek a final ruling from the court is a forfeiture of the matter. (*People v. Braxton* (2004) 34 Cal.4th 798, 813–814; *People v. Hayes* (1990) 52 Cal.3d 577, 618–619.) Raising this issue on appeal is therefore forfeited.

**B.** *No Ineffective Assistance of Counsel*

As one would expect, appellate counsel argues the failure to present this evidence reflects ineffective assistance of counsel. We disagree.

Based on the record here, it appears defense counsel made a shift in trial strategy regarding Doe I and her father. Before the trial, defense counsel was concerned about molestation by H.C. of his daughter. Counsel believed Doe I had a motive for accusing defendant of lewd conduct. However, after cross-examination by defense counsel, Doe I provided the defense with another motive for falsely accusing defendant of lewd conduct with her.

Doe I, during cross-examination, related the problems she had with rules in her father H.C.'s home. She also identified disputes she was having with her stepmother. Living in an American household with strict father, Doe I found him controlling and was upset with his manner of interfering with her school friendships. Doe I had known Uncle Oscar in El Salvador before coming to live with H.C., and she liked him very much. She viewed Oscar as a father figure. She wanted to live with Oscar and sought help from defendant to facilitate the effort. However, when Doe I told defendant of her desires, he sided with H.C. and told her she should stay with her father and accept his parenting. This position of defendant angered Doe I and triggered her false claim of molestations. In fact, this "explanation" for Doe I's accusations against defendant was disclosed by her at the preliminary hearing.

Defense counsel apparently believed the proper strategy at trial was for the jury to conclude Doe I was falsely accusing her client. A motive for such claims had to be developed. Defense counsel had successfully developed the motive based on defendant's support for H.C. in the preliminary hearing and cross-examination at trial; the idea of an alternative motive presented obvious defense risks. Doe I's credibility would be

21

undermined if the alternative theory was presented. In essence, it appears defense counsel made a cogent determination to pursue a motive that made sense and was developed in each instance when Doe I testified. It was the lone motive for her claims against defendant rather than the difficult choice of alternatives for the jury to consider. What counsel pursued as trial strategy was tactical and made sense.

Defendant cannot establish a claim of prejudice here for the reasons discussed above. He had a singular motive for the victim's allegations which would help the defense because of its reasoning. Also, the allegation of molestation by the father was provided to the defense by Doe I's grandmother who is defendant's mother, relating a cryptic conversation with Doe I. It was hearsay. It was provided by defendant's mother who had a motive for challenging Doe I's credibility. Doe I had never indicated she was molested by her father during the investigations. The presentation of a new motive for accusing defendant would have impaired the pro-defense version already postulated by Doe I at the preliminary hearing. Indeed, presentation of this alternative theory would not have helped the defense obtain a more favorable outcome. Defendant cannot demonstrate prejudice from his trial lawyer's strategy here. (*Strickland v. Washington, supra,* 466 U.S. at pp. 693–694.)

## VII. *Defendant's Claim of Ineffective Assistance of Counsel for Declining to Make a Hearsay Objection is Meritless*

Defendant contends his trial counsel should have objected to Doe II's testimony that when she called Oscar after her assault, Oscar told her, "Luis will never change." The record shows no objection by counsel; however, that may be attributed to use of the statement for the advantage of defendant.

The remark came up in cross-examination of Doe II. Defense counsel questioned Doe II about the call she made to Oscar asking to be picked up at defendant's home. Doe II stated Oscar indicated he could not come to pick her up and then included the remark, "Luis will never change." The defense then examined her on the fact she had never mentioned the statement before during the investigation. The defense, after examining her about the omission of the particular remark in her comments with police,

22

went on to challenge her testimony she told Oscar about the sexual assault at defendant's home. Also, when Oscar testified, he denied speaking to Doe II at all on the phone that morning. He testified he only received a voice mail from Doe II asking for a ride home, and Oscar passed this request on to Amber.

It appears defense counsel decided to challenge the recollection of Doe II regarding details of the phone call. Hearsay was not part of the cross; instead, defendant's counsel challenged particulars of the complaint made by Doe II. The testimony by Oscar that he did not speak personally with Doe II reinforced the contention that Doe II was creating a false "fresh" complaint of sexual assault when she spoke with Oscar. This strategy cannot be viewed on appeal as ineffective assistance of counsel. (*People v. Riel* (2000) 22 Cal.4th 1153, 1197.)

Even by not objecting, no prejudice to defendant is presented. Defendant concedes the case involving Doe II is strong. The remark attributed to Oscar was brief and somewhat cryptic. Oscar had value to the defense as a character witness for defendant and indicated he did not believe defendant did what Doe II said he did. The offenses involving Doe II were clearly more significant, carrying longer time in prison if proved.

It is true the trial judge mentioned the remark by Oscar at sentencing. However, the trial court may rely on hearsay in its sentencing decision. (*People v. Otto* (2001) 26 Cal.4th 200, 212–213.) When mentioned by the court, no objection was made by defendant's counsel. Frankly, there appears no likelihood the court would have imposed a different sentence if the remark was not received during the trial. There is no prejudice here.

## VIII. *Defendant's Claim of Cumulative Error is Meritless*

Defendant's brief proposes a litany of errors that he asserts should cause this conviction to be reversed. None of the alleged miscues, assuming they are valid, support the reversal of this case. Accordingly, the combination of the alleged errors similarly do not cause this court to reverse the convictions here. The purported cumulative nature of

the claims do not cause us to determine defendant was deprived of due process of law or a fair trial. (*People v. Thomas* (2011) 51 Cal.4th 449, 556.)

If errors did happen here, they were in toto, not substantial and do not trigger a reversal. They may only indicate that trials are not always perfect in delivery, but that can be observed after most trials. (*People v. Loker* (2008) 44 Cal.4th 691, 757.) Additionally, after reviewing the total record here, we conclude this was not a close case. Because of the substantial evidence in this case, the claim of cumulative error is not a factor in our decision. (*People v. Bunyard* (1988) 45 Cal.3d 1189, 1236–1237.)

## CONCLUSION

The judgment in this case is affirmed.

_____
Dondero, J.

We concur:

_____
Margulies, Acting P. J.

_____
Sepulveda, J.*

\* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.